

**SIGNED this 05 day of June, 2006.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 00-11338-FM |
|   FELIX REYNA, JR | ) | (Chapter 7) |
|   JUANITA REYNA | ) | |
| | ) | |
| RANDOLPH OSHEROW | ) | |
|   CHAPTER 7 TRUSTEE | ) | |
|        Plaintiffs | ) | ADV. NO. 05-1192FM |
| v. | ) | |
| | ) | |
| FELIX REYNA, JR., JUANITA REYNA, | ) | |
| SAMANTHA REYNA, MARCUS V. | ) | |
| REYNA, AND JULIE STEPHANIE | ) | |
| REYNA | ) | |
|        Defendants | ) | |

<u>MEMORANDUM OPINION</u>

The Court held a hearing on May 3, 2006 on Motion of Randolph N. Osherow, Chapter 7 Trustee's to Compel Production of Documents. After the hearing, the Court took this matter under advisement and requested briefs from counsel. The Trustee has filed a Complaint alleging fraudulent transfers and recovery of such, revocation of discharge and certain declaratory relief. This

discovery matter thus arises in a core proceeding under 28 U.S.C. §157. As such, it is a matter which arises both under title 11 and in a case under title 11. Accordingly, this Court has jurisdiction to enter a final order under 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. §151 and the Standing Order of Reference from the United States District Court for the Western District of Texas.

Statement of Facts

Background Facts

Defendants Felix Reyna, Jr. and Juanita Reyna (also "Debtors" herein) filed for relief under Chapter 7 of the Bankruptcy Code on May 1, 2000. The Debtors received their discharge on August 10, 2000 and the case was closed on August 10, 2000 as a "No Asset" case. The Debtors filed a *pro se* Motion to Reopen the case on or about March 5, 2003 to seek sanctions against Arlette Molina and Associates but on March 25, 2003 withdrew their Motion. Debtors, then represented by counsel, filed another Motion to Reopen to seek a discharge of the indebtedness of certain attorney fees incurred in connection with the Debtors' lawsuit against the City of San Marcos. The Court entered an Order reopening the case on July 30, 2004 to allow Adversary Proceeding 04-1278 to be filed.

At the trial of Adversary Proceeding 04-1278 evidence was introduced that on August 18, 1999 within one year of filing their bankruptcy the Debtors conveyed their principal residence and another tract of land to their children for little or no consideration. Such conveyances were not disclosed in the Debtors' Schedules or Statement of Financial Affairs. Further, it came to light that some of such property was reconveyed to the Debtors by their children after their bankruptcy case was closed. The Court noted its concerns with respect to these property transfers and the actions of the Debtors on the record at that time. As a result of this non-disclosure, the U.S. Trustee's office

filed a Motion for the Court to appoint a Chapter 7 Trustee to investigate the transfers and the circumstances surrounding such. Randolph Osherow was then re-appointed to act as the Chapter 7 Trustee in this case.

The Trustee has alleged that Mr. Reyna, prior to actually filing for relief under Chapter 7, attempted to represent himself and prepared a rough draft in his own handwriting of his and his wife's Schedules and Statement of Financial Affairs. Mr. Reyna then decided he needed an attorney's assistance and hired Robert Paul Randolph to represent he and his wife. Mr. Randolph used the rough draft to prepare the actual Schedules and Statement of Financial Affairs that were filed. The Trustee has filed his Motion to Compel discovery of this rough draft along with all the other documents in Mr. Randolph's file.

The Trustee, in his brief, asserts that even if the attorney-client communications are privileged, they are now discoverable under the crime-fraud exception as Mr. Reyna has perpetrated a fraud, if not a crime. The Trustee argues that the series of conveyances and reconveyances, whether in complicity with the Reynas' former attorney or not, are rife with badges of fraud, including making transfers to insiders (the Debtors' children), transferring properties for little of no consideration, the Debtors' retention of the use and benefit of the properties and the concealment of such transfers and the failure to disclose such in bankruptcy as required.

Debtors' counsel, in his brief, argues that the Trustee has not established a prima facie case of fraud which would allow discovery of Mr. Randolph's file. The Trustee has only allegations, assertions, and circumstantial evidence which is only grounds to conduct further investigation not discover attorney-client communications.

Debtors counsel has filed an answer in this adversary proceeding and has pled statute of limitations with respect to the Trustee's cause of action for revocation of discharge as Debtor's only

3

affirmative defense. The Court has issued a summary judgment ruling granting this defense.

Mr. Reyna, however, has filed his own *pro se* brief in opposition to this Motion to Compel as well as several other *pro se* responses to various other pleadings currently on file alleging that Mr. Robert Randolph, the Reynas' former bankruptcy attorney, omitted information that was in the rough draft forms given to Mr. Randolph by Mr. Reyna. In his brief in opposition to the Motion to Compel, Mr. Reyna indicates the rough draft contained the correct information regarding the property at issue and has called into question his former attorney's competence as a defense to the Trustee's Complaint.

## Issue Presented

Is the information in the Debtors' former bankrupty attorney's file protected by the attorney-client privilege?

## Conclusions of Law

The law of evidence recognizes that some confidential communications may be privileged at trial and during discovery, even though they have the effect of withholding relevant information from the factfinder, "because lawmakers and courts consider protecting confidential relationships more important to society than ferreting out what was said within the relationship." *United States v. Ballard,* 779 F.2d 287, 292 (5th Cir. ), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). It is obvious that the documents requested by the Trustee in this proceeding are protected by the attorney-client privilege. The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677,682, 66 L.Ed.2d 584 (1981). The attorney-client privilege does not exist, however, "when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act." *United States v. Ballard,* 779 F.2d 287, 292 (5th Cir. ), *cert. denied,* 475 U.S.

4

1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). This is where the crime-fraud exception applies.

To invoke the crime/fraud exception, a party must establish a *prima facie* case that a crime/fraud has been committed. A party must present evidence of an intent to deceive to establish a *prima facie* case of fraud or perjury. *Industrial Clearinghouse, Inc. v. Browning Manufacturing Division of Emerson Electric Co.,* 953 F.2d 1004, 1008 (5th Cir. 1992). *See also United States v. Ballard* 779 F.2d 287.

The Supreme Court has, however, provided fairly detailed guidelines regarding the burdens and methods of obtaining *in camera* review to also establish if the exception applies:

> We hold that *in camera* review may be used to determine whether allegedly privileged attorney-client communications fall withing the crime-fraud exception. We further hold, however, that before a district court may engage in *in camera* review at the request of the party opposing the privilege, the party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

*United States v. Zolin,* 491 U.S. 554, 575075, 109 s.Ct. 2619, 2632, 105 L.E.2d 469 (1989).

The Court is not certain that the Trustee has established a *prima facie* case that fraud has been committed although the circumstantial evidence is quite damaging to the Reynas. The Court does believe that the Trustee has presented evidence sufficient to support a reasonable belief that *in camera* review of the documents may yield further evidence that establishes the exception's applicability. The series of conveyances and reconveyances, including making transfers to insiders (the Debtors' children), transferring properties for little or no consideration, the Debtors' retention of the use and benefit of the properties and the concealment of such transfers and the failure to disclose such in bankruptcy as required, all reasonably support that the documents in Mr. Randolph's file would further establish whether the crime/fraud exception should apply.

5

However, no inspection at this time is needed, as Mr. Reyna, himself, has waived his attorney-client privilege by his affirmative reliance on the documents at issue. Mr. Reyna has repeatedly in his *pro se* pleadings questioned Mr. Randolph's preparation of the Reynas' Schedules and Statement of Financial Affairs. He blames Mr. Randolph for mistakes and/or omissions made in the filed Schedules and Statement of Financial Affairs that were prepared from the rough drafts Mr. Reyna personally provided to Mr. Randolph. Mr. Reyna claims he provided correct information to Mr. Randolph regarding the property transfers in these rough drafts.

A litigant cannot at one and the same time place privileged matters into issue and also assert that those matters nonetheless remain privileged and not subject to full disclosure and exploration. *Laughner v. United States,* 373 F.2d 326 (5th Cir. 1967). In *Laughner*, the plaintiff claimed that he was inadequately represented by counsel who urged him to plead guilty. Then he alleged it violated the privilege to call the lawyer to testify about their communications. The court rejected the proposal as outrageous. "The privilege is not an invioable seal upon the attorney's lips. It may be waived by the client, and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to the issue." *Id.* at 327.

Such a challenge may come in an action against the attorney for malpractice or conflict of interest or through claims of ineffectiveness asserted as a defense or an excuse in another action. *See Kabushiki Kaisha Hattori Seiko v. Gruen Industries, Inc.*, 4 Fed. R. Serv. 3d 830 (S.D.N.Y. 1986). Here, defendant claimed that the plaintiff committed fraud on the Patent and Trademark Office ("PTO") in prosecuting its trademark applications by intentionally failing to disclose that "SEIKO" means "precision." The defendant alleged that this failure infringed its prior right to the trademark "PRECISION." The plaintiff attempted to avoid the fraud claim by attributing its inconsistent

6

submissions to the PTO to an attorney's error that was "most likely based on a misunderstanding or confusion." The court concluded that the plaintiff's explanation waived the attorney-client privilege because it:

> tends to avoid defendant's fraud claim while failing to disclose how or why the attorneys became confused or misunderstood. In contravention of the policy behind the privilege, plaintiff thus attempts to use the attorney-client privilege as a sword by disclosing that the attorneys were confused or misunderstood and were not correctly representing plaintiff, and as a shield by refusing to disclose those communications, if any, that led to the misunderstanding or confusion. . .By avoiding defendant's fraud claim through reliance on its attorneys' claimed misunderstanding or confusion, plaintiff has put defendant at such a disadvantage that fairness dictates discovery by defendant of those documents out of which the confusion or misunderstanding arose.

*Id.* at 77.

Mr. Reyna cannot place at issue the actual documents the Trustee would like to review and expect to maintain the attorney-client privilege especially when Mr. Reyna claims those documents reflect that he provided fully accurate information regarding the property transactions to his attorney and the non-disclosure thereof on the schedules is his attorney's fault. He may not have his cake and eat it too. The Trustee's Motion to Compel will be granted as to all documents in Mr. Randolph's file which relate to the preparation and filing of the Schedules and Statement of Financial Affairs.

###